IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO MANUEL MENDOZA LOPEZ,<br><br>Petitioner,<br><br>v.<br><br>JANET NAPOLITANO, et al.,<br><br>Respondents. | Case No. 1:12-cv-01750 MJS (HC)<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING RESPONDENTS TO PROVIDE PETITIONER A BOND HEARING WITHIN THIRTY (30) DAYS |

    Petitioner is a citizen of Guatemala who is currently detained under the authority of the United States Immigration and Customs Enforcement ("ICE"). He is represented by Kevin M. Crabtree and is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent is represented by Audrey B. Hemesath of the office of the United States Attorney. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 2, 12.)

    This matter is before the Court on Petitioner's request for the Court to order his release or in the alternative to order an administrative bond hearing before an Immigration Judge. Respondents challenge Petitioner's right to a release or a bond hearing.

The Court finds that Petitioner's detention is not so prolonged and foreseeably indefinite as to warrant an order of release. However, the Court finds that Petitioner's detention has continued for a substantial period without procedures adequate to ensure protection of his liberty interests, and that a bond hearing should be held to address the appropriateness of his release.

I.       **PROCEDURAL AND FACTUAL BACKGROUND**

The facts of this case are undisputed. Petitioner is a native and citizen of Guatemala who initially entered the United States on or about August 9, 1991 without inspection or parole. On November 12, 1992, Petitioner filed an application for asylum. The request was denied in 1993, and Petitioner was placed into deportation proceedings. On April 25, 1995, an Immigration Judge denied the applications for asylum and withholding of removal, ordered Petitioner removed, and granted him voluntary departure. Petitioner appealed to the Board of Immigration Appeals; the Board denied the appeal on February 28, 1996. Petitioner failed to depart within the voluntary departure time period, and was ultimately deported on March 6, 2000.

Petitioner was next encountered by ICE in the United States on October 4, 2011. ICE executed an order of reinstatement of the deportation order on that same day. Petitioner claimed a fear of returning to Guatemala, and his case was referred to the asylum office. Petitioner was released on an order of supervision at that time because of the childcare needs of his family. Petitioner reentered ICE custody on January 18, 2012, when ICE determined the childcare needs were no longer applicable. Petitioner has remained in detention to the present date, over two years.

During that time, an asylum officer determined on May 2, 2012, that Plaintiff had not shown a reasonable fear. Petitioner's case was referred to an Immigration Judge for a review of that decision, and the Immigration Judge upheld the negative determination. Petitioner then filed a petition for review in the Ninth Circuit, docket number 12-71466. The Ninth Circuit granted Petitioner a stay of removal, and upon the government's unopposed motion, remanded the case to the Immigration Judge for a new reasonable

1 fear determination.

2     Upon remand from the Ninth Circuit, on December 11, 2012, the Immigration
3 Judge issued a decision again concluding that Petitioner had not demonstrated a
4 reasonable fear. Petitioner appealed the denial to the Ninth Circuit on December 13,
5 2012, docket number 12-74084. Petitioner again sought and received a temporary stay
6 of removal. Ninth Cir. Case No. 12-74084, Docs. 1, 4. Then, on December 21, 2012, the
7 Ninth Circuit noted that Petitioner had filed with United States Citizenship and
8 Immigration Services ("CIS") for a U-visa. Doc. 11. The U-visa application remains
9 pending with CIS at present. On January 24, 2013, the Ninth Circuit stayed proceedings,
10 including adjudication of the stay motion, until CIS adjudicates the U-visa petition. Doc.
11 18.

12     Meanwhile, Petitioner challenged his detention administratively. Petitioner filed a
13 motion in immigration court seeking an immigration judge bond hearing. Pet. ¶ 19. The
14 Immigration Judge denied the motion and Petioner filed a new motion again seeking a
15 bond hearing on April 17, 2012. Id. at ¶ 21. The Immigration Judge denied the motion,
16 finding that Petitioner lacked jurisdiction to conduct a custody redetermination hearing
17 because Petitioner was in reinstatement proceedings. Answer, Ex. A at pp. 10-12.
18 Petitioner appealed the denial of the bond hearing to the Board of Immigration Appeals,
19 and on August 1, 2012, the Board denied the appeal, agreeing with the reasoning of the
20 Immigration Judge that reinstatement aliens are ineligible for bond hearings. See Id., p.
21 9.

22     Petitioner's custody status has been reviewed administratively by ICE. In a
23 custody review performed on April 10, 2012, ICE determined that Petitioner should
24 remain in detention because of risk to the community.

25 **II.**     **JURISDICTION**

26     This motion does not concern the underlying merits of Petitioner's challenges to
27 the reinstatement of his deportation and related proceedings. Rather, Petitioner is
28 challenging his continued detention while he awaits resolution of the immigration

3

proceedings and the ultimate removal that might follow. District courts have jurisdiction to hear such challenges under 28 U.S.C. § 2241 -- the Courts' power to grant writs of habeas corpus. Despite the dwindling jurisdiction of the district courts in immigration matters, the Supreme Court has explicitly recognized the continued jurisdiction of the courts where, as here, continued detention without due process raises constitutional concerns. Demore v. Kim, 538 U.S. 510, 517, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003). In Demore, the Supreme Court held that 8 U.S.C. § 1226(e) contains no explicit provision barring habeas review under section 1226(c), and that "its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail." Id. The Court finds no reason why the language of the 1226(e), which refers to the entire section, would apply differently to Petitioner's present challenge under section 1226(a). Respondent presents no challenges to jurisdiction. Accordingly, the Court finds that jurisdiction is proper. See Zadvydas v. Davis, 533 U.S. 678, 687-88, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) (addressing 8 U.S.C. § 1231).

### III.    ANALYSIS

"Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Respondent asserts that Petitioner is being detained pursuant to 8 U.S.C. § 1226(a). While § 1231(a)(5) pertains to the reinstatement of Petitioner's prior removal order, the language of that provision does not authorize detention. The authority for Petitioner's detention must be derived from § 1226(a) authorizing detention "pending a decision on whether the alien is to be removed" or § 1231(a)(6) authorizing "removal period" and post "removal period" detention. Authorization for detention shifts from § 1226(a) to § 1231(a)(5) at the critical moment when the "removal period" begins as determined by § 1231(a)(1)(B):

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined . . . the date the alien is released from detention or confinement.

Thus, the start date must hinge on the date on which Petitioner's order of removal is administratively final. Because Petitioner was previously removed to Guatemala pursuant to a 1995 removal order, the Attorney General was able to "reinstate" that order without additional review of his status. 8 U.S.C. § 1231(a)(5). However, since Petitioner claimed asylum based on a reasonable fear of prosecution, Respondent contends that the matter is not considered administratively final. Rather, the administrative order in his case will only be final once ICE determines if he is entitled to a withholding of removal. Since Petitioner's removal period has not yet started, the authority for his detention is currently based upon § 1226(a). Petitioner does not object to finding that he is detained under 8 U.S.C. § 1226(a). Instead, Petitioner asserts that the section under which he is detained is not relevant to the current analysis.

The question presented to the Court is whether the procedural protections in place for Petitioner are adequate given the duration of his detainment. While the Supreme Court has addressed the due process limitations of § 1231 post-removal-period detention in Zadvydas and the short period of § 1226(c) detention authorized for criminal aliens in Demore, it has not directly addressed § 1226(a) detention for aliens "pending a decision on whether the alien is to be removed."

The Ninth Circuit has addressed the right to a bond hearing by an immigration judge of aliens detained under § 1226(a). See Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942 (9th Cir. 2008). In Casas-Castrillon, the Ninth Circuit found "no evidence that Congress intended to authorize the long-term detention of aliens such as Casas without providing them access to a bond hearing before an immigration judge." Id. at 950.

Furthermore, in a series of cases, the Ninth Circuit has repeatedly affirmed the right to bond hearings in light of due process concerns of the continued detention of

aliens. See Rodriguez v. Robbins, 715 F.3d 1127, 1134 (9th Cir. 2013). In Rodriguez, the Ninth Circuit explained that "in a series of decisions since 2001, the Supreme Court and this court have grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Id.

In Tijani v. Willis, the Ninth Circuit held that the detention under § 1226(c) of a lawfully admitted resident alien subject to removal for over 32 months was "constitutionally doubtful" and remanded the matter for a bail hearing. 430 F.3d 1241, 1242 (9th Cir. 2005).

In Casas-Castrillon, the Ninth Circuit determined that § 1226(c)'s mandatory detention provisions apply only until the BIA affirms a removal order, at which point the government's authority to detain the alien shifts to § 1226(a), where it remains during judicial review. Further, the Court held that under § 1226(a)'s discretionary detention regime, a bond hearing is required before the government may detain an alien for a prolonged period. 535 F.3d 942, 949-51 (9th Cir. 2008). Further, in Diouf v. Napolitano, 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit indicated that an "alien's continuing detention becomes prolonged" at the 180-day mark. Id. at 1091.[1]

Finally, in Rodriguez, the Ninth Circuit reaffirmed that regardless the stage of the immigration proceedings, aliens should be provided freedom from prolonged detention:

> The government's attempts to distinguish our post-Demore authority are unavailing. It is certainly true, as the government notes, that by its terms Casas concerned an alien who had received an administratively final removal order, sought judicial review, and obtained a remand to the BIA; thus, it did not expressly apply to aliens awaiting the conclusion of their initial administrative proceedings. But this seems to us a distinction without a difference, and the government does not present a persuasive reason why the same protections recognized in Casas should not apply to pre-removal order detainees. Regardless of the stage of the proceedings,

---

[1] "When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial. The burden imposed on the government by requiring hearings before an immigration judge at this stage of the proceedings is therefore a reasonable one." Id.

>  the same important interest is at stake—freedom from prolonged detention.

Rodriguez v. Robbins, 715 F.3d at 1134 (citations omitted).

Here, Petitioner's twenty-six (26) month pre-removal-period detention clearly implicates concerns over primarily procedural due process. Zadvydas, 533 U.S. 690 (analyzing whether "adequate procedural protections" were in place to ensure that the government's stated reasons for continued detention were fairly weighed against the "individual's constitutionally protected interest in avoiding physical restraint").

Respondents contend that the internal review process provides sufficient process as required under the Constitution. See Opp'n at 8. According to Respondent, Petitioner's file was reviewed -- ostensibly giving consideration to a number of factors weighing on his likelihood to be a flight risk or to commit crimes while on release. However, Zadvydas and Casas-Castrillon both questioned the adequacy of the administrative review process in protecting the rights of both post-removal-order and pre-removal-order detainees, especially as compared to a bond hearing before a neutral decision maker. Zadvydas, 533 U.S. at 692 ("[T]he sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous, without . . . significant later judicial review."); Casas-Castrillon, 535 F.3d at 951 ("This review falls far short of the procedural protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an immigration judge and have an opportunity to appeal that determination to the BIA."); see also, Diouf v. Napolitano, 634 F.3d, 1081, 1091 (9th Cir. 2011). ("[A]t the 180-day juncture, the DHS regulations are appropriate but not alone sufficient to address the serious constitutional concerns raised by continued detention [under § 1231].").

Like the internal reviews in the above cases, it appears that the review of Petitioner's detention status lacked a personal interview, a genuine opportunity to contest the underlying facts on which the determination was made, a genuine opportunity to contribute to the record, and the right to an administrative appeal.

The Court must also consider the duration of the detention. In <u>Zadvydas</u>, the Court used the "period reasonably necessary to secure removal" as a benchmark for the constitutionality of the duration of post-removal-period detention. <u>Zadvydas</u>, 533 U.S. at 699. Recognizing that while Congress probably did not expect all removals to be effectuated within 90 days of the final order of removal, it likely believed that detention longer than six months is generally unwarranted. <u>Id.</u> at 701. Regardless, the liberty interest becomes more substantial as the "period of . . . confinement grows." The Court took a similar tack in <u>Demore</u>, finding that pre-final-removal-order detention of six months was only a little more than average for aliens that appeal their removal orders and was less troublesome because the detainee requested a continuance that delayed the proceedings for a month. <u>Demore</u>, 538 U.S. at 530-31, n.15 ("[T]he detention at stake . . . lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.").

Central to this analysis is the idea that detention must "bear a reasonable relation to the purpose for which the individual was committed." <u>Zadvydas</u>, 533 U.S. at 690 (internal quotation marks and alterations omitted). Part of that relationship is the time necessary to complete that purpose. In <u>Zadvydas</u>, it was clear that the purpose -- removal -- was "no longer practically attainable," diminishing the justification for prolonged detention. <u>Id.</u> In <u>Demore</u>, the administrative removal proceedings were delayed but ongoing and the detainee was being removed because of his criminal history. This presented a more robust flight risk rationale and a more pronounced public safety rationale for his six-month detention. In navigating these two guideposts to determine the standard under § 1226(a), the Ninth Circuit noted that § 1226(c) is a narrower grant of detention authority for the purpose of taking into custody and removing criminal aliens on an expedited basis. <u>Casas-Castrillon</u>, 535 F.3d at 951. The language of § 1226(a) allows detention of any alien "pending a decision on whether the alien is to be removed." However, the court still found that the alien's detention under § 1226(a) for

seven years, "if unaccompanied by meaningful, individualized review, would clearly be a far longer period of detention than the 'brief' period of mandatory detention during administrative review that the Supreme Court approved in Demore." Id. at 949-50. The Court ordered a bond hearing.

Section 1226(a) may authorize a longer period of detention but only if procedural safeguards protect the detainee's liberty interests. Zadvydas, 533 U.S. at 688 (describing due process limitation as a limit of the authority granted by statute). In the present case, they do not. Petitioner has been detained without an individualized opportunity to genuinely participate in the determination of whether he is a danger to the community or a flight risk. His detention has lasted over two years, well beyond the six-month period found constitutional in Demore. Although Petitioner's appeals and request for withholding have delayed a final administrative order, the record does not indicate that Petitioner has requested any continuances or that he has acted in bad faith to delay the termination of the requisite administrative proceedings. In addition, the appeals process could well extend these proceedings even longer. Finally, though Casas-Castrillon dealt with a much longer detention, it does not preclude finding a violation in much shorter periods.

Despite having the opportunity, Respondent fails to address Supreme Court and Ninth Circuit authority regarding the prolonged detention of aliens. See Zadvydas v. Davis, 533 U.S. 678; Demore v. Kim, 538 U.S. 510, Casas-Castrillon, 535 F.3d 942, Tijani v. Willis, 430 F.3d 1241; Diouf v. Napolitano, 634 F.3d, 1081; Rodriguez v. Robbins, 715 F.3d 1127. All that Respondent attempts to do is differentiate this case from Casas-Castrillon, based on the fact that Casas-Castrillon dealt with post-order detention review, rather than pre-order detention review (as is found here). (Opp'n at 7.) However, as the Ninth Circuit recently explained, "regardless of the stage of the proceedings, the same important interest is at stake - freedom from prolonged detention." Rodriguez, 715 F.3d at 1139 (citing Diouf, 634 F.3d at 1087.) In light of this authority, other district courts confronting the same situation have granted petitioners

relief in the form of individualized bond hearings before an immigration judge. See Pierre v. Sabol, 2012 U.S. Dist. LEXIS 66231 (M.D. Pa. May 11, 2012); Uttecht v. Napolitano, 2012 U.S. Dist. LEXIS 156654 (D. Neb. Nov. 1, 2012).

Though the government has statutory authority to detain Petitioner under § 1226(a) until there is a final order of removal, given the length of his detention he is entitled to more than discretionary review of his file. Due process requires the opportunity to "contest before a neutral decision maker whether the government's purported interest is actually served by detention in this case." Casas-Castrillon, 535 F.3d at 949. Accordingly, Petitioner is entitled to an individualized bond hearing before an Immigration Judge.

**IV.   ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is GRANTED in part;

2) Within thirty (30) days of the date of this order, Respondent shall provide Petitioner with an individualized bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a); and

3) Petitioner's motions for expedited hearing and motion to enforce settlement agreement are DENIED as MOOT. (Docs. 21, 24)

IT IS SO ORDERED.

Dated:   March 17, 2014          /s/ *Michael J. Seng*
                                 UNITED STATES MAGISTRATE JUDGE